Opal HAMILTON, Mrs. Jerry Dutton, Mary L. Glemboski and Doyle C. Scott, Plaintiffs in Error,

v.

Ray BARBER et al., and North Park Shopping Center, Inc., and Howard G. Vinson, Director of Building Department of the City of Oklahoma City, Oklahoma, Defendants in Error.

No. 43471.

Supreme Court of Oklahoma.

Sept. 8, 1970.

Wilbert G. Smith, Oklahoma City, for plaintiffs in error.

McClelland, Collins, Sheehan, Bailey & Bailey, by H. B. Scoggins, Jr., Cantrell, Douglass, Thompson & Wilson, by David M. Harbour, Oklahoma City, for defendants in error.

JACKSON, Justice

This is an appeal from a judgment of the District Court of Oklahoma County granting an application for a variance from the strict application of the zoning ordinance of Oklahoma City. The action in the district court was an appeal from the Board of Adjustment of Oklahoma City, which had also granted the variance.

Applicants for the variance were the owners and lessees of an unplatted tract of land approximately 820 feet square upon which they plan to construct a shopping center. Roughly the west half of the tract is already zoned for commercial purposes; applicants' request for a building permit was denied by the Oklahoma City Building Superintendent because the east half lies in an area zoned for single family residences. Applicants then appealed to the Board of Adjustment, where their application was opposed by the City of Oklahoma City, its Building Superintendent, and some taxpayer-protestants. When the Board granted the variance for the east portion now zoned for residential purposes, the Building Superintendent and Oklahoma City appealed to the district court which, after trial de novo, in effect affirmed the Board of Adjustment and granted the variance, attaching certain conditions to be hereinafter noted.

The taxpayer-protestants then appealed to this court. In their brief they argue generally, under three propositions, that the trial court's judgment is not supported by the evidence.

The shopping center tract is bounded on the west by Portland Avenue, on the north by Will Rogers Park, on the east by Grand Boulevard and on the south by a row of single family residences fronting southward on N.W. 28th Street. The east side is slightly concave because of a curve in Grand Boulevard; the other three sides are straight, except for a very small rectangle at the southwest corner of the tract which is excluded.

There is little dispute as to the applicable law. The applicant for a variance from the zoning ordinance of Oklahoma City has the burden of showing (1) that the granting of the variance will not be contrary to the public interest; (2) that the literal enforcement of the ordinance will result in unnecessary hardship; (3) that if the variance is granted the spirit of the ordinance will be observed; and (4) that substantial justice will be done. Board of Adjustment v. Shanbour, Okl., 435 P.2d 569; Thompson v. Phillips Petroleum Co., 194 Okl. 77, 147 P.2d 451. See also 11 O.S. 1961, Sec. 407, and Sec. 13.19.05B, Revised Ordinances of Oklahoma City.

The entire west boundary of the proposed shopping center tract (about 820 feet) and all but 325 feet of the north boundary, abutting Will Rogers Park, is already zoned

for commercial purposes. Much of the area across Grand Boulevard to the east is also used for commercial purposes including, among other things, an Oklahoma City restaurant. It was stipulated that none of the owners or tenants of the row of single residences constituting the south boundary had any objection to the variance requested. The area across Portland Avenue is also zoned or used for commercial purposes. Thus, of the portion for which the variance was requested, only the south boundary and about 325 feet of the north boundary abutting Will Rogers Park is not presently zoned or used for commercial purposes. The taxpayer-protestants (plaintiffs in error here) apparently are not the owners of any abutting or adjoining property, and appear to be interested mainly in the effect the variance would have on Will Rogers Park and Grand Boulevard, a "park" street at this point, which runs through it.

Witnesses testifying for the applicants included two State Highway Department engineers, the City Planning Director of Oklahoma City, an engineer from the Oklahoma City Traffic Department, two realtors, a professional real estate appraiser, one of the applicants and several property owners.

Mr. Coffman, a Highway Department engineer, testified with regard to a new highway, Interstate 440, commonly known as the West Bypass, which was in process of construction at the time of trial. In places it coincides with Grand Boulevard, also known as the West Bypass, but at the point where it will pass the proposed shopping center area in a north-south direction it is located about 600 feet east of Grand Boulevard. Mr. Coffman said that the shopping center area would not be affected by the completion of Interstate 440 and that at that point Grand Boulevard would become a local street.

Mr. Painter, the Oklahoma City Planning Director, testified for the applicants that the only property used for single family residences actually touching the proposed site was the row of single family residences on the south. He said that the City Planning Commission of Oklahoma City had recommended to the City Council that the area be rezoned to permit the construction of the shopping center, and that in arriving at that recommendation, the proximity of Will Rogers Park to the proposed center was specifically given consideration. This recommendation was presumably not followed by the City Council. Mr. Painter also testified that, with properly designed controls, the proposed shopping center would not have any great detrimental effect upon nearby residential property.

Mr. Hoyt, a professional real estate appraiser whose qualifications were stipulated and who had made a detailed study of the area, testified that since the residences in the area were "much older in character", a prudent investor would simply build homes "similar to the surrounding area" in order to keep them from taking on an "automatic economic obsolescence"; he said that the limited size of the area would hinder its development for single family residences, and that a prudent developer would find it advisable to "screen" the property to a depth of about 75 feet, thus cutting down on the "developable area". He said that the proposed center is in the school attendance area of Madison Grade School, which is located east of Grand Boulevard and the Interstate 440 route. It was his opinion that use of the site for a shopping center would not affect school children attending that school since Interstate 440 would be a limited access road with no permitted crossings opposite the shopping center site. He said that the characteristics of the area "are not generally compatible for single family residential use".

Mr. Burghart, a realtor, gave testimony in general accordance with that of Mr. Hoyt. He said that the surrounding area was "older" and had "depreciated to a considerable extent", and that the site was suitable for commercial use. He said that "Properly screened, as I understand it is

planned, I do not see any real adverse effect" upon Will Rogers Park.

Mr. Kyrk, an engineer with the Oklahoma City traffic department, testified with regard to a traffic study made of the area in view of the proposed shopping center development. He said that during peak periods an additional 114 cars per hour would be using Grand Boulevard to get to the proposed shopping center. He defined "peak periods" as being the Christmas and Easter sales periods and said that during the balance of the year, the traffic would be considerably less. It was his opinion that the additional traffic would not require additional traffic controls on Grand Boulevard for either pedestrians or vehicles.

For the protestants, there was testimony from the Oklahoma City Director of Parks and Recreation, the chairman and vice chairman of the Oklahoma City Park Board, a State Representative, an engineer, an official of the City-County Health Department, an appraiser, and several property owners. They gave testimony in substantial conflict with most of that above summarized. In addition, there was testimony from the Health Department official with respect to prevailing winds, refuse and trash disposal, smoke and flying ash in connection with shopping centers. However, on cross examination he said that if an incinerator is installed and properly operated in accordance with Oklahoma City ordinances, there would be no problems.

In the journal entry of judgment, the trial court found in effect that the applicants had met the burden of proof under which they labored by virtue of the cited rule from Board of Adjustment v. Shanbour, supra, and granted the variance. However, he attached conditions which in effect required, among other things:

(1) the erection of a six-foot chain link fence made sight-proof according to Park Department specifications along the north, east and south sides of the tract;

(2) that lights from the tract not be directed toward Will Rogers Park;

that loud speakers not be used except inside the buildings; and that no debris, noise, odor, garbage, smoke or light be permitted to "create a disturbance" to Will Rogers Park or the persons using it;

(3) that use of the property under the variance granted be subject to regulations in the city ordinances applicable to shopping centers in areas zoned as "E" Commercial District.

(4) that no traffic be permitted to enter or leave the shopping center through Will Rogers Park and that the cost of any traffic control devices that might be required by the Oklahoma City Traffic Control Department be paid by applicants or their successors in interest; also, that any entrances or exits on Grand Boulevard be subject to approval by the Director of Traffic Control of Oklahoma City.

■ Although, as we have noted, the evidence was in conflict on most pertinent points, after a careful consideration of all of the evidence and the conditions attached by the trial court we are of the view that the judgment of the trial court is clearly supported by the weight of the evidence. The "special conditions" required to exist by 11 O.S.1961, Sec. 407, consist of the fact that this tract is comparatively large, a "contiguous" unit, is unplatted and has no dedicated streets or alleys or installed utilities. Since its use as a shopping center will have no great detrimental effect on the residential area to the south, will have no effect upon school children attending Madison Grade School, and will not have "any real adverse effect" upon Will Rogers Park, the granting of the variance cannot be said to be contrary to the public interest. In view of the fact that this tract has characteristics which are not now "generally compatible for single family residential use", for which it was originally zoned but not developed, it is clear that unnecessary hardship would result to applicants if the zoning ordinance were literally enforced. Since much of the sur-

rounding property is already zoned or used for commercial purposes, no violence is done to the spirit of the ordinance. Considering all of the evidence, and especially considering the conditions attached to the granting of the variance, we think the trial court's conclusion that substantial justice will be done is justified.

The judgment of the trial court is affirmed.

All the Justices concur.